ORIGINAL

# In the United States Court of Federal Claims

No. 14-460C
June 13, 2014

**FILED**

JUN 1 3 2014

U.S. COURT OF
FEDERAL CLAIMS

| | |
|---|---|
| * * * * * * * * * * * * * * * | |

CHRISTOPHER M. BAIR,

       Plaintiff,

     v.

THE ATTORNEY GENERAL, THE
PRESIDENT OF THE UNITED
STATES, THE HONORABLE JUDGE
PRESIDING AT THE UNITED STATES
COURT OF FEDERAL CLAIMS,

       Defendants.

Pro Se Plaintiff; Motion to
Dismiss; Subject Matter
Jurisdiction

**Christopher M. Bair**, New Philadelphia, OH, pro se.

**Ellen M. Lynch**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendants. With her were **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch, and **Stuart F. Delery**, Assistant Attorney General, Civil Division, Washington, D.C.

### O R D E R

HORN, J.

    On May 27, 2014, pro se plaintiff Christopher M. Bair, who, at times, refers to himself as "Pro epio – 'Airenost,'"[1] filed a number of documents, which the Clerk's Office should not have accepted as a "complaint," but assigned a case number. Given that plaintiff only submitted a random assortment of documents, which in no way resembles a complaint, and in which he never mentions the jurisdiction of this court, the Clerk's Office should have returned Mr. Bair's submission, together with his filing fee, instead of opening a case file and assigning a case number.

---

[1] Plaintiff's documents are difficult to follow. Original words, capitalizations, grammar, and spelling are quoted as they appear in the documents filed by plaintiff.

The documents in plaintiff's initial filing are comprised of a series of letters addressed to Attorney General Eric Holder, The President of the United States, Barack Obama, and to the "Honorable Judge Presiding" at the United States Court of Federal Claims, together with assorted United States District Court forms.[2] The letters submitted include:

1. An April 10, 2014 letter addressed to "the Public Office of the Attorney General, and to the President of the United States."
2. An April 28, 2014 letter addressed to "the Public Office of the Attorney General."
3. A May 21, 2014 letter addressed to "the Honorable Judge Presiding" at the United States Court of Federal Claims.
4. A second May 21, 2014 letter addressed to "the Honorable Judge Presiding" at the United States Court of Federal Claims.
5. A May 23, 2014 letter addressed to "the Honorable Judge Presiding" at the United States Court of Federal Claims.
6. A second May 23, 2014 letter addressed to "The Honorable Judge Presiding" at the United States Court of Federal Claims.

Plaintiff alleges that, under the leadership of President Barack Obama, the United States government committed various acts against him and others entitling plaintiff to $2.5 billion in damages.

---

[2] In this court, however, the only proper defendant is the United States, which plaintiff did not name as defendant. Rule 10(a) of the Rules of the United States Court of Federal Claims (RCFC) (2013) states that "[t]he title of the complaint must name all the parties . . . , with the United States designated as the party defendant." RCFC 10(a); see also 28 U.S.C § 1491(a)(1) (2012). The United States Supreme Court has indicated that for suits filed in the United States Court of Federal Claims and its predecessors, "[i]f the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court." United States v. Sherwood, 312 U.S. 584, 588 (1941) (citation omitted). Stated differently, "the only proper defendant for any matter before this court is the United States, not its officers, nor any other individual." Stephenson v. United States, 58 Fed. Cl. 186, 190 (2003) (emphasis in original); see also United States v. Sherwood, 312 U.S. at 588; Brown v. United States, 105 F.3d 621, 623 (Fed. Cir.), reh'g denied (Fed. Cir. 1997); Hover v. United States, 113 Fed. Cl. 295, 296 (2013) ("As an initial matter, it is well settled that the United States is the only proper defendant in the United States Court of Federal Claims."); Warren v. United States, 106 Fed. Cl. 507, 510-11 (2012) ("It is well settled that the United States is the only proper defendant in the Court of Federal Claims."); May v. United States, 80 Fed. Cl. 442, 444 ("Jurisdiction, then, is limited to suits against the United States."), aff'd, 293 F. App'x 775 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2008).

The court also notes that plaintiff has filed similar complaints with the United States District Court for the Northern District of Ohio and the United States Court of Appeals for the Sixth Circuit, all of which were dismissed either for failure to state a claim or for failure to pay the requisite filing fee. See Bair v. Clinton et al., No. 13-3498 (6th Cir. June 21, 2013) (dismissing the case for failure to pay the docketing fee); Bair v. Clinton et al., No. 5:13-cv-00593-JRA (N.D. Ohio Mar. 27, 2013) (Dismissing the case because "the complaint does not state any conceivable, viable cause of action against the defendants."); Bair v. Armhurst, No. 3:12-cv-02933-JJH (N.D. Ohio Mar. 20, 2013) ("Even liberally construed, the Complaint in the instant case fails to sufficiently state any federal claims . . . ."); Bair v. Hemelgarn et al., No. 5:12-cv-02922-JRA (N.D. Ohio Feb. 7, 2013) (Holding that plaintiff's complaint "does not contain allegations which are intelligible to this court. The complaint is therefore appropriately subject to summary dismissal." (citation omitted)); Bair v. Parishi et al., No. 5:12-cv-02940-SL (N.D. Ohio Dec. 5, 2012) (dismissing plaintiff's complaint for failure to pay the filing fee).

In the first letter from plaintiff addressed to the President, dated April 10, 2014, plaintiff requests "immediate monetary relief through settlement by Federal Law," but does not cite to any cognizable federal statute. In the letter, plaintiff claims that defendant "put members of my family and others in a specific Mansion in Sunnydale, SC. Know to the Superior Justice Committee as 'The Executive Manor of Infernal Hell Hodge.'" (emphasis in original). Plaintiff further claims that in "The Executive Manor" is a "false floor sudden trap door" that "drops its victims thirty feet down into a infected maze of necrotic type high speed contagious disease and undead creatures including demon dogs." As a result, plaintiff claims, "[m]y family and others like it have been rearranged, separated, demolished, and forced into despair."

In the April 10, 2014 letter, plaintiff also claims that he had "been desolately abused and forced into cardiac arrest many times by your colleges," and that he had been the target of "hundreds devised plots of 'hire to kill' by means of reference type literature . . . ." Plaintiff further claims that "[t]here has been many assaults and many crimes made against me inside the banking system as well." These and other alleged assaults, including an invasion of plaintiff's privacy, were alleged to have been committed using "satellites with radiance type sophisticated weaponry."

Plaintiff also alleges that President Obama had "even used my name improperly. By referring to me, in times of dire importance by the name Chris Bliss, Chris Bliso, Chris Bease, or Beasty." Plaintiff claims that he had "also been totally demised; barbarously, fiendishly, and deliberately completely neglected and lied to" about "The Executive Manor." Plaintiff further alleges in his April 10, 2014 letter that the President and his administration had "also made crimes against me by keeping the knowledge of these crimes a secret from the Public and I." In his April 10, 2014 letter, plaintiff requests the President pay him $2.5 billion "in the respect of your total involvement in

this ominous quandary," but in a subsequent paragraph, immediately offers a settlement of $60,000,000.00.

Also included as part of plaintiff's initial filing is an April 28, 2014 letter plaintiff addressed to the United States Office of the Attorney General, although plaintiff addressed the letter "To the Public Office of the Attorney General." In the April 28, 2014 letter, plaintiff revokes "the offer of settlement" and informs the Attorney General that "I shall continue to seek Lawful Justice for his own Presidential and criminal actions." Plaintiff also claims the

> President's own self-involvement in the death of a child that was frozen solid inside the false mansion. Where in which an impostor who poses as my Father has froze the child with an Arcille type nitrogestic-rayl freeze blaster. And then the President stood idle-by when someone shattered the unfortunate child to pieces.

Plaintiff then calls for the President's "resignation from all duties." Plaintiff concludes the April 28, 2014 letter by invoking "my right to the Act of Dyslexia of 1984. Of that, the Opportunity Knowledge Acts: Four, Six, and Thirteen."

Moreover, as part of plaintiff's initial filing, he submits four letters addressed to the United States Court of Federal Claims, two dated May 21, 2014 and two dated May 23, 2014, one of which requests "your Honor give matter of this atrocity the full brightness of your shining light." In one May 21, 2014 letter, plaintiff claims that "[t]his travesty has grown to an unfathomable proportion. To the extent of almost complete annihilation of my whole blood-line." In addition to the cardiac arrests plaintiff references in his April 10, 2014 letter to President Obama, plaintiff claims that the President "left me barictea, barzaude, and even procuplia." Plaintiff further claims that "Barack Obama has committed a number of brutal acts against myself and even most possibly against a young boy . . . . " Plaintiff claims that the child's blood "was completely collected by members of the United States Secret Service and including White House agents of the Federal Bureau of Investigation."

In addition, included with plaintiff's letter filings are incomplete and unsigned "UNITED STATES DISTRICT COURT" documents with the following headings: "**SUBPOENA TO APPEAR AND TESTIFY AT A HEARING OR TRIAL IN A CIVIL ACTION,**" "**SUMMONS IN A CIVIL ACTION,**" "**ANTICIPATORY SEARCH AND SEIZURE WARRANT,**" and "**SEARCH AND SEIZURE WARRANT ON ORAL TESTIMONY.**" (emphasis and capitalization in original). Also included in plaintiff's initial filing are two copies of a document titled: "To be added to submitted for with Claim to case," listing items of which it appears plaintiff would like the court to take note. Some of these items include: "Request of Federal Special Victims Legal Guarantee: Federalolice," "A

4

statement to for a Requim for Personance," and "The Official terms of Derituviea." Additionally, although plaintiff appears to have paid the court's filing fee, he submitted an unsworn affidavit stating his "Total annual yearly income: $17,160.000." Plaintiff also asserted that he owns $83,385.00 worth of various stock and property, and "25,056,089.000" Mexican pesos worth of stock in an American-Mexican company.

On June 9, 2014, the court received two additional letters from plaintiff. One letter, dated June 6, 2014, was addressed to the undersigned, while the other letter, dated June 7, 2014, was addressed to the Clerk of the Court. Neither document was signed, in violation of RCFC 11(a). Moreover, neither letter contained proof of service on the defendants, in violation of RCFC 5.3. The letters were filed, with the court's leave, only to complete the record. Both the letters contain many incomprehensible words, as well as spelling and grammatical errors, including the misspelling of the Clerk of the Court's name. Neither letter states a specific claim or provides any support for plaintiff's previous filings.  For example, in the June 6, 2014 letter addressed to the undersigned, plaintiff writes:

> These squars I choose in Ebresquose. I do in retrospect of the rilesicls anoutenti by the Reiso-suitor known as 'Larken'. To be in as the forthwith typesos: (D), (G), (I), (Z). This is so to be with a Declaration of Answaraklia. A rightouse and deliberate honor that is begiven to people in assistance to the transacclumation of adversary.

In the June 7, 2014 letter addressed to the Clerk of the Court, plaintiff writes: "It is by me at this time that I make malstueva adovickiea to the Declaration of utrichi to that of the third type, without mastuvince allowed. With beareance to the light of the Court's berklintiea."

On June 11, 2014, the court received two more letters from the plaintiff, both dated June 9, 2014, and both, once again, replete with spelling and grammatical errors, including the misspelling of the undersigned's name and the Clerk of the Court's name. In one letter, addressed to the undersigned, plaintiff states: "I have chosen the Court of Federal Claims in respect due to me where upon my stiroea to be in doubts of such accordance." In the other June 9, 2014 letter, this one addressed to the "Clerk of Courts," plaintiff appears to be seeking a correction to a letter he previously submitted to the court, asking the Clerk of the Court to amend the spelling of "umritchi" to "umritichi." Neither letter was submitted in accordance with the Rules of the Court of Federal Claims. These letters were also filed, with the court's leave, only to complete the record.

When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, pro se plaintiffs are entitled to liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (requiring that allegations

5

contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, No. 2013-5109, 2014 WL 1758664, at *1 (Fed. Cir. May 5, 2014); Diamond v. United States, 115 Fed. Cl. 516, 524 (2014). "However, '"[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his [or her] pleading."'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9 and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

None of the documents filed by plaintiff are in the form of a proper complaint or are even vaguely in compliance with the court's rules, and should not have been filed as a complaint by the Clerk's Office in the first place. Nevertheless, because these filings were accepted by the Clerk's Office as a complaint, the court addresses the allegations. The court also recognizes that pro se plaintiffs should be afforded liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. at 520–21. Even given this more liberal approach, plaintiff's letters and other submissions are totally deficient as filings in this court. Moreover, plaintiff's filings fail to establish any cause of action in this court.

It is well established that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson ex rel. Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011); see also Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing

Arbaugh v. Y & H Corp., 546 U.S. at 514)); Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990))); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." Arbaugh v. Y & H Corp., 546 U.S. at 506; see also Cent. Pines Land Co., L.L.C. v. United States, 697 F.3d 1360, 1364 n.1 (Fed. Cir. 2012) ("An objection to a court's subject matter jurisdiction can be raised by any party or the court at any stage of litigation, including after trial and the entry of judgment." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506)); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1346 (Fed. Cir. 2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506; Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); and Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998))); Pikulin v. United States, 97 Fed. Cl. 71, 76, appeal dismissed, 425 F. App'x 902 (Fed. Cir. 2011). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise sua sponte, even where . . . neither party has raised this issue." Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1369 (Fed. Cir.) (citing Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1485 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir.), cert. denied, 525 U.S. 826 (1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. granted in part sub. nom Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc., 546 U.S. 975 (2005), cert. dismissed as improvidently granted, 548 U.S. 124 (2006).

Pursuant to the RCFC and the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2013); Fed. R. Civ. P. 8(a)(1), (2) (2014); see also Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57, 570 (2007)). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp.,

501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, No. 2012-5104, 2014 WL 1394969 (Fed. Cir. Apr. 11, 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555-56 (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982), recognized by Davis v. Scherer, 468 U.S. 183, 190 (1984); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006); Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Boise Cascade Corp. v. United States, 296 F.3d 1339, 1343 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002), cert. denied, 538 U.S. 906 (2003).

The Tucker Act grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal

8

government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289-90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Smith v. United States, 709 F. 3d 1114, 1116 (Fed. Cir.), cert. denied, 134 S. Ct. 259 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343 ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver . . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605-06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 7. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also Testan [v. United States], 424 U.S. [392,] 401-02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal

Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d
at 1009)). This category is commonly referred to as claims brought under
a "money-mandating" statute.

Ontario Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004);
see also Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must
demonstrate that an independent source of substantive law relied upon "'can fairly be
interpreted as mandating compensation by the Federal Government.'" United States v.
Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. at 400); see
also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v.
Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383
(Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting
monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo
Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply
a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims
premised on other sources of law (e.g., statutes or contracts)."). "'If the statute is not
money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal
should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed.
Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v.
United States, 487 F.3d at 876); Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir.
2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction
under the Tucker Act."); Peoples v. United States, 87 Fed. Cl. 553, 565-66 (2009).

After reviewing all the disparate documents plaintiff submitted, the court cannot
determine a cogent claim in plaintiff's filings over which this court has jurisdiction.
Plaintiff does not cite to any identifiable United States statute for the $2.5 billion in
damages he seeks. Likewise, plaintiff does not allege any express or implied contract
with the United States, nor does he seek a refund from prior payment made to the
government. See United States v. Navajo Nation, 556 U.S. at 289-90 (holding that the
Tucker Act waives sovereign immunity to allow jurisdiction over claims against the
United States (1) founded on an express or implied contract with the United States, (2)
seeking a refund from a prior payment made to the government, or (3) based on federal
constitutional, statutory, or regulatory law mandating compensation by the federal
government for damages sustained). Although the court has reviewed the pro se
plaintiff's submission liberally, "'"[t]here is no duty on the part of the trial court to create a
claim which [the plaintiff] has not spelled out in his [or her] pleading."'" Lengen v. United
States, 100 Fed. Cl. at 328 (alterations in original) (quoting Scogin v. United States, 33
Fed. Cl. at 293 (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d at 1169.

Furthermore, even if Mr. Bair had a fact based claim for alleged wrongdoing by a federal official, he would be raising a tort claim, and his suit would not fall within the jurisdiction of this court. The Tucker Act expressly excludes tort claims, including those committed by federal officials, from the jurisdiction of the United States Court of Federal Claims. See 28 U.S.C. § 1491(a)(1); see also Keene Corp. v. United States, 508 U.S. 200, 214 (1993); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343; Alves v. United States, 133 F.3d 1454, 1459 (Fed. Cir. 1998); Brown v. United States, 105 F.3d 621, 623 (Fed. Cir.), reh'g denied (Fed. Cir. 1997); Golden Pac. Bancorp v. United States, 15 F.3d 1066, 1070 n.8 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed. Cir.), cert. denied, 513 U.S. 961 (1994); Sellers v. United States, 110 Fed. Cl. 62, 66 (2013); Kalick v. United States, 109 Fed. Cl. 551, 558, aff'd, 541 F. App'x 1000 (Fed. Cir. 2013); Hampel v. United States, 97 Fed. Cl. 235, 238, aff'd, 429 F. App'x 995 (Fed. Cir. 2011), cert. dismissed, 132 S. Ct. 1105 (2012); Woodson v. United States, 89 Fed. Cl. 640, 650 (2009); McCullough v. United States, 76 Fed. Cl. 1, 3 (2006), appeal dismissed, 236 F. App'x 615 (Fed. Cir.), reh'g denied (Fed. Cir.), cert. denied, 552 U.S. 1050 (2007); Agee v. United States, 72 Fed. Cl. 284, 290 (2006); Zhengxing v. United States, 71 Fed. Cl. 732, 739, aff'd, 204 F. App'x 885 (Fed. Cir.), reh'g denied (Fed. Cir. 2006).

## CONCLUSION

Plaintiff's filings do not rise to the level of a complaint which should have been filed in this court. In addition, none of Mr. Bair's allegations are within the jurisdiction of this court. Plaintiff's "complaint" is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** consistent with this Order.

**IT IS SO ORDERED.**

**MARIAN BLANK HORN**
**Judge**

11